And of course, I've told you all about the timing, but I should have mentioned you don't have to take the whole time if you don't have anything more to say. All right, with that, we will turn to the next case, which is case 25-20351, Van Dyke v. Alonso et al., and we have Jason Bird. Good morning, Your Honors. Jason Bird here on behalf of the appellant, Scott Van Dyke. In 2019, in the Taggart v. Lorenzen decision, the Supreme Court clarified that the standard for holding a creditor in contempt for violating the discharge order is an objective one. It can be stated as there's no fair ground of doubt as to whether the order barred the creditor's conduct. Alternatively, there's no objectively reasonable basis for concluding that the creditor's conduct might be lawful. Now, this Court hasn't had a lot of opportunities to apply Taggart, and in particular has not yet considered the issue in this case, which is whether a creditor who gets relief from the automatic stay, but who fails to comply with the statutory requirement to get the exemption from discharge, can be held in contempt for continuing to pursue that claim post-discharge. And while this Court has not considered that issue post-Taggart, it did consider the relationship to the automatic stay and the discharge in the McGirt decision back, I think it was around 1989. And in that case, the Court specifically held that even a creditor who obtains relief from the automatic stay, if they do not timely file for an exception from the discharge under 523C, they have waived their exception to the discharge. In McGirt, they waited four months too late to file their 523C petition under the Federal Rule of Bankruptcy Procedure 4007, and the Court said non-dischargeability has been waived. Now, here the creditor never filed any attempts to pursue a claim under 523C at all. So there is no question. Any exemption to discharge here has been waived. And so McGirt answers the question in this case as a legal matter. It is not reasonable to fact that— Actually, you say in your first issue that the Bankruptcy Court found that a violation of the discharge order had occurred. Where in the record is the District Court's finding that a violation of the discharge order occurred? Well, I don't know. The District Court didn't address that issue. The Bankruptcy Court found it. You said the Bankruptcy Court found a violation of the discharge order. Correct. If you take a look in the record— Not the TRO. Not finding a substantial likelihood. Where is there an order saying there was a violation? Well, I don't know that the Bankruptcy Court entered a specific order that there was a violation, but I think if you look at the oral argument and the oral statements in the record at 1519, the Court specifically says, I find that if there was any collection on activity up for damages prior to January 31, 2002—  So the Court didn't find there was a violation. It said in its clarifying order that you need to avoid the pre-conversion. Well, the Court said no. So the clarifying order was entered in 2024. In 2025, the Court had a hearing. The Court said specifically, if you are collecting on any damages that occurred before January 31— I read that to be a finding of a violation of the discharge order. Well, I think if you look at the record in this case, it is readily apparent there is a violation. If you take — in the case is the complaint, the amended complaint that was filed in February of 2024. That complaint specifically says, we are seeking damages against Scott Van Dyke for fraud. Every date in that complaint— Right. And then they come twice to get clarification about where they can go with the deposition. Well, they only come one time after that to get clarification. But here are the parameters. These are the boundaries. But at that point, they've already litigated that case for a year. I mean, all the activity that occurred from— Remember, this petition was filed before you even get to the conversion to Chapter 11. So they start litigating this case in December of 2021. Then the discharge happens in December of 2022. At that point, they are no longer allowed to litigate a claim against Mr. Van Dyke for damages because of fiduciary fraud that occurs before January 31, 2022. Well, they come and say they want to lift. Well, they don't. Well, the first thing they do is they file a second amended complaint seeking damages. I mean, they do that in February of 2024. They don't do anything before they do that. They come in—they go to the probate court, and they say, we are seeking over $250,000 in damages from Scott Van Dyke, seeking direct and exemplary damages from Scott Van Dyke. That is in the record. There are several cases that's in there, but you can find the whole complaint at 767. And if you read the complaint, the complaint plainly seeks damages against the creditor for violating—I mean, for his breach of fiduciary duty. That, just on its face, is a violation of the discharge order. If you look at what they tell the court, when they file the motion for clarification, they specifically say the debtor's fraudulent conduct all occurred during the pendency of the Chapter 11 bankruptcy. That's in the record at 420. That is a concession that all of the conduct they're complaining about happened before the case was converted to Chapter 7. If you take a look at the hearing that they had in February of 2025, they say most of the fraudulent conduct happened before Mrs. Van Dyke died, which was December 6, 2021. Again, that's an admission that they're seeking to recover against him for conduct that was pre-discharge, pre the conversion to Chapter 7, conduct that has been discharged because they failed to come in and seek to have the discharge, a non-dischargeability finding under 523C. And so having done that, they are now violating the discharge order. And what they are relying on and what the district court relied on is the district court said, well, they have these two orders. They have the relief from the stay that was entered in, like, May of 2022, long before there was a discharge, and they have the clarifying order, which, frankly, is about three lines long, from the middle of 2024. It's, I think, July 2024, that says you're allowed to, you know, it's clarifying the stay order. It says you're allowed to proceed. Both of those are orders interpreting the automatic stay. Neither order refers to the discharge at all. It is not legally reasonable to think that because you have an exception to the automatic stay, you can proceed to try to collect on a discharge debt. That's what the McGirt case says that quite clearly. If you just look at these two provisions of the Bankruptcy Code, they are entirely separate. They have different purposes. The automatic stay serves to protect creditors. The discharge is about offering a fresh start to the debtor, in this case, Mr. Van Dyke. Once he gets that discharge, he is entitled to move forward with his life without spending multiple years defending a lawsuit brought against him for pre-discharge conduct. The statutory language is completely different. The method of enforcement is different. As we point out, the exceptions under 363 are completely separate from the exceptions to discharge under 523. In particular, there is a for-cause exception to the stay where the Bankruptcy Court can just decide as a matter of its own discretion, I find that there's cause here to allow you to move forward with your case. There's no for-cause exception to the discharge. The discharge is fine. And 523C makes crystal clear that this type of case, for breach of fiduciary duty accompanying fraud, you have a specific procedure you have to follow. You have to file a motion to determine non-dischargeability. You have to do it within 60 days of the first creditor's meeting under Rule 4007, and they didn't do that. And in this case, there were several other creditors who did do that. Everybody understood. There was a meeting. You had to file by this date. Here, they even moved for an exemption from the stay, but they didn't do what they had to do to preserve the discharge, and so the claim was discharged. And if you look at TAGR, go back to the Supreme Court on this, they really address most of the issues in this case. They say specifically, courts have imposed contempt sanctions for the purpose of compensating the complainant for losses stemming from the defendant's noncompliance. Here, that's all the attorney's fees Mr. Van Dyke incurred over numerous years defending this lawsuit, even before we get to this clarifying hearing in February of 2025. They had been litigating for years at that point. They had filed the amended complaint. But TAGR says specifically, a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable. But here, what you're getting from the appellee is, well, I had two orders from the district court, therefore I'm allowed to go forward. Those orders were interpreting the stay. The stay is over as soon as the discharge happens. You can't objectively, reasonably think, because I have an exemption from the stay, I'm allowed to collect on a discharged debt. That's just legally wrong. If you look at the one case this court has decided, post-TAGR, now it was a per curiam decision, but in the matter of ICURT, this court said, if you're interpreting Texas law wrong, even if you think what you're doing is allowed, if you get the legal interpretation wrong, that's not objectively reasonable. And similarly here, if you're misinterpreting the way the stay connects to the discharge, you are committing a discharge violation, even if you're doing it in complete good faith, because that is an objectively unreasonable position to take. If the makes court never found a discharge violation, specify exactly when and what action you say was the violative act. It wasn't asking for a lift stay. It wasn't asking for clarification of it. It was what? I think the filing the second amended complaint, in which you are specifically going to the probate court, and you're saying, I'm asserting claims against Mr. Van Dyke. I'm seeking over $250,000 of damages for his fiduciary fraud. They file that 14 months after the discharge. They're clearly well aware of the discharge at that point. That is just as textbook a discharge violation as you can get. You can't file a complaint to collect a discharge debt. There are some cases out there, they cite one, suggesting that you might be able to proceed against a debtor if they're a nominal defendant, or if, you know, I think in that case in Edgeworth, it was a Judge Jones opinion, and she said, well, as long as all the attorneys fees are being paid by an insurance company, there's really no harm. None of that was going on here. If you take a look at the second amended complaint, there's absolutely no suggestion that he's a nominal defendant. The second entry in their sort of what they're seeking in their prayer is damages against Scott for his fiduciary breaches. They're specifically seeking damages against him. They continue for over a year before we get to that hearing in February 2025. That is as crystal clear a discharge violation as you can get. And, indeed, to get back to the point about the automatic. What is it that you, if we sent this back, what is it that you want to do? What I want to do is I want you to reverse the court. I want you to send it back to the bankruptcy court, and I want the bankruptcy court to have a hearing on what the proper sanction should be for the discharge violation. And Mr. Van Dyke should be allowed to put on his evidence as to the attorney's fees he incurred, the costs he incurred, the damages he suffered, several years of being sued about purportedly defrauding his mother and the effect that had on his business relationships and everything else, and then the creditor will get to put on their evidence of good faith and argue that, you know, the damages should be reduced for some reason. There should be a damages hearing for the contempt heard in front of the bankruptcy court. And if you go look at the procedural history of Taggart, that happened there. The bankruptcy court initially found no discharge violation. It went to the district court. The district court reversed. The bankruptcy court said, okay, discharge violation, let's figure out what the sanction is. And that's what needs to happen here. It just needs to go back to the bankruptcy court, and Judge Lopez needs to decide on the proper sanction for the discharge violation. One thing I'll just note from a question of standard of review, I think here that because of the objectively reasonable standard under Taggart, this is really a question of law. The issue of whether there is a fair ground of doubt is an objective standard, is a legal standard. This Court should review that de novo. There was a second assignment of error we made about the bankruptcy court's failure to notice the show cause for hearing or to take any evidence. I think, frankly, as long as it's a legal issue and we're reversing on that basis, I don't know that you have to reach that. But to the extent there is a question about whether there are factual issues, you know, was there a discharge violation, what were the damages from the discharge violation, then I think it has violated Mr. Van Dyke's due process that he wasn't given notice that this was all going to be heard on that date in February of 2025. He wasn't given the opportunity to present any evidence. Now, I understand the bankruptcy court has discretion, but if you look at that timely secretarial case, this Court held that where a party was only given an hour's notice that something was going to be heard, that wasn't sufficient notice. Here we discovered that this was going to be heard literally at the hearing in February of 2025. And the other thing I would say is that Mr. Van Dyke, in this case, he went overboard. He took every action he could to try to get this discharge enforced. He filed a motion to show cause when nothing happened on that. He filed a preliminary injunction. He filed a TRO. He sent a letter to the judge. He was begging, please, give me the fresh start I'm supposed to get under the bankruptcy. Judge Lopez allows self-calendaring, correct? I believe that is right, yes. Did he file a motion to set it for a hearing? So I was not the bankruptcy court attorney who handled it. I believe he did. I believe my understanding is they were simply unable to get a hearing, but I believe they tried to get it set for a hearing and were unable to. And I don't know that that's specifically reflected in the record on appeal. So ultimately, we believe this court should reverse. On the hearing issue, you're saying a due process violation. You're not pointing to a particular bankruptcy rule that requires that he get a hearing. No, simply the rule that he's got to be given adequate notice before his motion is going to be heard and the opportunity to present it. But if the local practice is that you self-calendar, you're saying he actually did try to, you think? I believe he did try to self-calendar the show cause. And the hearing that was set was, I believe, just on the TRO, and then they ultimately, you know, there's that godfather quote in the record. They decided to address everything at the hearing once they were there. So we believe this court should reverse the district court's decision, remand this matter back to the bankruptcy court, because there was a discharge violation here and the bankruptcy court should determine the proper sanction for that in the first instance. Unless there are further questions, I'll reserve the remainder of my time. Okay. You'll have a rebuttal. Now we'll hear from your opponent, Joseph Maglioli? Maglioli. Maglioli? It's very hard. That's not how it's spelled here, but anyway. I hope that's not my fault, because it's never a great start. You can tell me your name. I will not require to make my own version of it. Fair enough. Go. Thank you, Your Honor. Joe Maglioli, may it please the court. I'm here on behalf of Appelese. Maglioli is here. I thought you said Maglioli. No. Maglioli. Okay. You got it. Go ahead. Thanks, Judge. I'm here on behalf of Appelese, Mary Catherine Alonso, Rudolph Kupp, and Sarah Pacheco. Mr. Van Dyke has failed in his briefing today to demonstrate that the district court clearly erred in refusing to hold my clients in contempt, because the record does not demonstrate that they violated his rights under the discharge order. And to the extent this court has any concerns about acts that my clients took before the probate court, they were all justified by a fair ground of doubt under Taggart, particularly because most of the activities about which he actually complained before the bankruptcy and district courts took place pursuant to post-discharge orders that the bankruptcy court or district court entered. And as for a hearing, he says today in the first instance that he is not entitled to one under the rule he cites. In his brief, he indicated that he was entitled to one under 9014. But he certainly invited error on this point, and this court doesn't need to reach it, because he told the bankruptcy court very clearly on several occasions during that October 2024 hearing that should the court rule in my client's favor, as it did, that no hearing was necessary and that it could rule on the papers. 9014 wouldn't apply to him as the move-in anyway? Precisely, Your Honor. My clients would have the right to be heard. But 9014 gives the move-in no further rights other than filing the motion. The party against whom relief is sought, my clients, would have the opportunity to be heard. Do you know the answer to my fact question? He seemed to think maybe it's not reflected in the record, but that he did try to set this matter for a hearing? I see nothing in the record reflected. I was in bankruptcy counsel. I can't speak to it directly. But I certainly see nothing in the extended discussions, particularly in February of 2025, that reflected that Mr. Van Dyke's counsel thought that such a hearing was necessary. He was given every opportunity to ask for one. Never did. On that first issue on whether or not contempt was appropriate, this court well knows the standard of review is clear error. And Mr. Van Dyke has not nearly met that high bar to demonstrate that the district court clearly erred in its finding that contempt was not necessary. And in my research, and certainly in Mr. Van Dyke's brief, I've not seen a decision of the district court not to impose contempt, not to impose sanctions, and then reversed to go back for further consideration. The most this court I have ever seen do in this context is tell a district court, if you're going to refuse contempt, you have to explain why. That's certainly not the case here. And there is no reason for this court to plow new ground and make new law on the facts before it today. And as to whether or not my clients violated the contempt order, I think the court is clear that it did not, that they did not. My friend, Mr. Birch, has, I think, dramatically oversimplified what is contained in the second amended petition. And I want to be clear on something in terms of the relief that he's seeking. In the show cause motion, he does not make reference to these months of litigation. The approximate cause, as it were, for the show cause motion were just the filing of the second amended petition. But in any event, the second amended petition was done in order to add other defendants to this party. Mr. Van Dyke was an existing defendant to this party. The purpose of it was to add other defendants to this case. These are people who were added so that we could seek liability against them on a derivative basis. It's called active encouragement under Texas law. I think a fair way of thinking about it is like aiding and abetting. To establish that claim against those defendants, we have to first, to a jury, establish that Mr. Van Dyke violated his fiduciary duty, which the jury ultimately found. That then gives us the right to seek monetary damages against those co-defendants. Mr. Van Dyke received all the benefits of bankruptcy protection that he was due. That jury made that finding against him on the fiduciary duty basis, but we could not and did not seek monetary damages against him on that basis. We could seek it against his co-defendants. But it doesn't protect him. There's nothing that he has cited to, particularly here on clear error of view, that indicates that the cost of defense in this situation are something that are discharged by bankruptcy. And that's particularly important where his attorney, during the February 2025 hearing, made important concessions about what my clients were permitted to do. We had an equitable claim for accounting against Mr. Van Dyke. Mr. Van Dyke's attorney conceded that that was acceptable. Mr. Van Dyke's attorney conceded that a certain level of discovery was acceptable. So it's important to note what he has conceded here and what was actually in the Second Amendment petition. Now, the claim for damages, I will concede, was a bit inartfully pled, but at least gave my clients the opportunity, as Judge Lopez noted, to pursue post-discharge damages. Ultimately, we didn't take that step. We amended the petition two more times. In both of those amended petitions, we did not seek damages personally against Mr. Van Dyke for either pre- or post-discharge debts. But the timeline here, I think, matters a great deal because the only time when there was not a post-discharge order granting my clients the right to conduct themselves in the way they did was between February 2024 and June of 2024. In June of 2024, February we filed the petition. By June, Mr. Van Dyke's counsel conceded, I believe, on page 363 of the record that we were taking no further actions. And by July 2024, there was a bankruptcy court order indicating that we could proceed with the probate case. There is this very narrow window within which he has not alleged any specific acts that violated the discharge order. From July 16, 2024 forward, everything that my clients did was done pursuant to either a bankruptcy court or subsequent district court decision. Edgeworth is distinguishable on several important grounds. In Edgeworth, the creditor was seeking to enforce a legal malpractice claim against the person whose debt has been discharged. So there was a personal claim against that particular debtor who had his debt discharged. The insurer was bearing the cost of his defense, although that portion was dicta. Here, we needed to establish Mr. Van Dyke's liability in order to establish his co-defendant's liability on the act of encouragement claim. And he has cited to nothing, I have found nothing that indicates that my clients were not on solid ground depending on federal court orders. The standard is not whether we were ultimately correct about the issue. It's whether it would be reasonably objective to do so. Here, it certainly was. And all of that conduct after July 16, 2024 was done pursuant to that. And citation to 5090, I think, does no better in that regard, Your Honor. He said y'all filed 14 months later. How could that make sense? You mean the Second Amendment petition, Your Honor? Yeah, that's what he said. Sure. And he said that was ridiculous. So what is your response to that? I mean, I think temporally that's correct. But the purpose of the Second Amendment petition was to add these other parties against whom we could seek monetary damages. I mean, the biggest substantive difference between the amended petition and the Second Amendment petition was adding other parties so that these are parties against whom we could and did seek monetary damages. They certainly weren't a party to the bankruptcy process, and their debts were not discharged. They didn't get the benefit the way Mr. Van Dyck did. And I'd also add, I mean, in terms of past the point that I don't think he raised before the district court that litigating this case prior to February 2024 was the basis for the show cause motion. I think it very explicitly is not in that show cause motion. So I think he's waived it to the extent he's raising it for the first time here. My understanding is that he, in an answer to the petition that we filed, sought attorney's fees under the Texas Civil Practice and Remedies Code. Presumably the jury trial was the time to seek those. I don't know whether he did or didn't, but I certainly don't think it's appropriate here because I don't think he's demonstrated on clear review that we violated the discharge order or that there wasn't a fair ground of doubt justifying all the acts my clients took. And on the hearing, as I mentioned in the brief, and I will not belabor the point, he invited this error on at least three separate occasions in October of 2024, basically imploring the bankruptcy court to rule as quickly as it could. And there's several exchanges that I think are critical on this point, several of which are not in Mr. Van Dyck's brief. But the most important one, I think, takes place on 1477 and 1478, where Judge Lopez is telling the parties he's been working up to this point, but he says essentially they tried to schedule it. They were talking about scheduling the hearing, but then Judge Lopez, I think the light bulb goes off, and he says, if I can do it on the papers, I'll do it on the papers. If I feel like I need some argument or anything, I'll call you in. Mr. Van Dyck's attorney responds, that works perfectly. No insistence on a hearing, no claim to a right to a hearing. All Judge Lopez was doing was abiding by the principles that Mr. Van Dyck's attorney said at bankruptcy court level, which is if you can rule against my client on the papers, then no hearing is necessary. The court has no further questions. I'll see the balance of my time and just simply ask it to affirm the decision of the district court. Thank you, Your Honor. Okay, any questions? Okay. Thank you. Thank you, Judge. We'll hear from your opponent. What's your response to what he said to what I asked him about? I was going to go right to that, Your Honor, because I think you're exactly right. It's ridiculous. Fourteen months after they get the discharge, he files a Second Amendment complaint, and it specifically says, wherefore premises considered, plaintiffs pray that this court award actual and exemplary damages against Scott and in favor of plaintiffs for his breaches of fiduciary duty. You couldn't get a clearer discharge violation than that. And that's 14 months after the discharge was filed. Now, it is true in the interim they had appointed an estate administrator, a gentleman named Rudolph Kulp. He took over the case. He evaluated it. He was aware of the discharge. And he is one of the defendants and appellees here because he then filed this complaint seeking to collect against Mr. Van Dyke for pre-discharge, pre-petition conduct. And that is the discharge violation. And I think, you know, there's a suggestion here that, you know, they were complying with the bankruptcy court order. They got a bankruptcy court to sign a very short order saying they could proceed with the probate in July 2024. Therefore, they're insulated from everything. If you take a look at that, what that would be saying is that if you get relief from the stay and you can just get a bankruptcy court to say, yeah, you still got relief from the stay, you don't have to worry about the discharge. You can continue to take actions to collect on the debt forever. And that's just inherently inconsistent with the bankruptcy code. The whole point of the bankruptcy code is when you get the discharge, you're supposed to get a fresh start. You're supposed to be protected from people collecting. And the whole point of 523C is if somebody says they get to collect against you because of your fiduciary fraud, they've got to come in and get a finding. There's got to be a determination by the court. I think this court in the Compton case specifically said you can't even collect during dependency of time until you get that determination. It's been discharged. And here, if a party can simply get an exemption to the stay and use that to keep collecting on the discharge, then the discharge is worth nothing. In this situation, Mr. Van Dyke received the discharge. Clearly, that discharge covered the claims brought in this lawsuit. If you take a look at the lawsuit, you read it carefully, there's not a single reference in the facts to anything that happened post-petition. Every factual reference of the complaint is December 2021 or earlier. All of the events they're complaining about happened in the events leading up to the sale of the mother's house in December of 2021. And the position was converted a month and a half later. But they're going after the third parties. The reason they want Van Dyke is to be able to get access to the third parties. If they had filed a complaint that said Mr. Van Dyke is a nominal defendant and we're not seeking damages against Mr. Van Dyke, it would be a different case. There's no plausible way to read this complaint, to say they're not seeking damages against Mr. Van Dyke for discharge conduct because they say it. But isn't that exactly what the bankruptcy court then clarified? Although the bankruptcy court told them, I mean, remember the bankruptcy court granted a TRO. The bankruptcy court said, I'm going to stop you from trying to continue to collect on pre-petition activity. He wouldn't have granted a TRO if he didn't find they were likely to succeed on their claim that they were violating the discharge.  But then he said, I'm going to give you guidance going forward. If you're going to keep doing this February 2025 forward, you've got to stop trying to collect on the pre-petition behavior. And so it is true. After that, I think they did, going forward, stop trying to collect. But we've got a year worth of litigation from the filing of the Second Amendment complaint through to this hearing in February 2025 where they are actively trying to collect on this debt. And that is a discharge violation. And the fact that the bankruptcy court came in and issued a TRO and told them, I'm going to enjoin you to stop, is a recognition that they were violating the discharge injunction during that period. And that is, that's a violation, and they should be held in contempt, and there should be sanctions for that. And that is the error made by both the district court and the bankruptcy court. It is not enough to say, I'm relying on an order interpreting the stay. Therefore, I can just go and try and collect on discharge debts. That is just a plain legal error. It is not objectively reasonable under Taggart. There is no fair ground of doubt that you cannot take an order that interprets the automatic stay and say, I'm now allowed to collect on discharge debt. If that was the rule, the discharge would be worthless. We would just be talking about automatic stays. The whole point of 523C is that you don't just get to get a four-cause exemption from the stay. You've got to go prove that your debt is non-dischargeable, and they didn't do that. And because of that, what they did here was violate the discharge, and they must be held in contempt. And so we would ask that this court reverse the district court and bankruptcy court and send it back down for a hearing for the proper remedy. Okay. Thank you. We appreciate both sides' arguments, and we'll take this under decision.